
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA
SEP 22 2008
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JAMES RAY THOMAS** | : | **DOCKET NO. 07-1447** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **GENIE INDUSTRIES, INC., ET AL** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is "Defendant's Motion for Summary Judgment" (doc. #24) wherein defendant, Genie Industries, Inc. seeks to have the claims asserted against it under the Louisiana Products Liability Act,[1] dismissed because Plaintiff has allegedly failed to adduce sufficient evidence to sustain the cause of action.

### FACTUAL STATEMENT

On October 30, 2006, James Ray Thomas was injured when his left index finger was pinched between the gasket of the hydraulic manlift from which he was working and a section of steel plate he was attempting to weld. At the time of the accident, Thomas was using a Genie model S-120 self propelled articulating boom lift ("S-120"). Thomas was injured when the Genie S-120 continued to "boom out" after he released the boom control joystick. After the incident, Wade Hanchey and Craig Daigle confirmed that the S-120 would continue to boom out and not return to neutral after the joystick was released. Subsequent testing also revealed that the foot switch was operating normally. An inspection after the incident revealed a tear in the rubber boot which protects the

---

[1] La. R.S. 9:2800.50, *et seq.*

joystick's control surfaces and debris lodged in the control surfaces of the joystick preventing it from returning to the neutral position.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the

---

[2] Fed. R.Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[5] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[6] *Anderson*, 477 U.S. at 249.

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## LAW AND ANALYSIS

Thomas has brought claims based on the Louisiana Products Liability Act ("LPLA") against Genie Industries, Inc., ("Genie"), the manufacturer of the boom lift. Thomas has also asserted negligence claims against the owner and lessor of the boom lift, Hertz Equipment Rental. To maintain a successful products liability action under the LPLA, Thomas has the burden of proving four specific elements: (1) the defendant is a manufacturer of the product; (2) there is a characteristic of the product that made it "unreasonably dangerous;" (3) the damage to plaintiff was proximately caused by this characteristic of the product; and (4) the claimant's damages arose from a reasonably anticipated use of the product by the claimant or someone else.[10]

A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

Genie maintains that Thomas will be unable to prove, by a preponderance of evidence that

---

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Anderson*, 477 U.S. at 249-50.

[10] See La. Rev. Stat.Ann. § 9:2800.54(A).

3

the Genie-120 was "unreasonably dangerous" as defined by the LPLA.

*Construction/Composition*

The characteristic of the product that renders it unreasonably dangerous in composition must exist at the time the product left the control of the manufacturer.[11] Genie maintains that Thomas has offered no evidence that the Genie S-120 was unreasonably dangerous in construction or composition. Therefore, Thomas cannot satisfy the elements of LPLA Section 2800.55 which states that "a product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specification or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."[12]

A claimant must demonstrate not only the manufacturer's specifications or performance standards for the product, but also how the product materially deviated from those standards.[13] Genie submits summary judgment evidence to demonstrate that before the Genie S-120 left its control, it was tested by Genie quality control personnel; all functions of the machine were verified and no aspect of the machine was outside of Genie's specifications.[14]

Thomas maintains that there is no evidence that Genie considered the parameters of intended use in composition and construction of the S-120. Thomas asserts that the composition of the S-120 is inadequate for dusty industrial environments and for being exposed to rain and other weather

---

[11] La. Rev. Stat.Ann. § 9:2800.54(C).

[12] La. Rev. Stat.Ann. § 2800.55.

[13] *Jenkins v. Int'l Paper Co.*, 945 So.2d 144, 151 (La.App. 2 Cir. 2006).

[14] Defendant's Exhibit H, Product Certification.

4

conditions due to the lack of a cab on the machine. Thomas further asserts that when the S-120 left the manufacturer's control, it deviated from the ANSI mandated standards and specifications because the JS100 joystick did not provide adequate protection from the elements to which the S-120 would be exposed. The Court finds no merit to this argument. Thomas failed to provide evidence that the S-120 deviated in any way from the manufacturer's specification or performance standards for the product.

*Design Defect*

There are three prongs to the defective design claim under the LPLA; (1) an alternative design existed at the time the product left the manufacturer's control, (2) the alternative design was capable of preventing the claimant's damage, and (3) if an alternative design existed which could prevent the damage, the utility of the product must be weighed against the risk of harm.[15]

Genie submits summary judgment evidence that the S-120 complies with ANSI A92.5-1992 standards for aerial lift equipment.[16] The joystick ("JS100") used to control the boom extension and retraction is manufactured by Sauer Danfoss, Inc. and is specified for typical use in aerial lift equipment. Thomas maintains that an alternative design was available to Genie that was capable of preventing Plaintiff's harm – the JS1000.[17] Thomas asserts that the JS100 used in this case has an environmental seal rating below the flange of 43 and that Sauer Danfoss manufactures several joysticks which have a 67 rating that is dust tight and can be immersed in water.[18] Thomas' expert,

---

[15] La. Rev. Stat.Ann. § 2800.56; *Bernard v. Ferrellgas, Inc.*, 689 So.2d 554, 558 (La.App. 3 Cir. 1997).

[16] Exhibit D, report of John Rapson, P.E.

[17] Plaintiff's Exhibit 5.

[18] *Id.*

5

Charles Norman, opines that a 67 above and below the flange rating is necessary to provide adequate environmental protection in an industrial setting, and that the JS100 has a limited environmental hazard rating.[19] Mr. Norman remarked that the JS1000 "is recommended with an environmental hazard rating of 67/67 for 'harsh, out of cab service'" and that '[t]here are numerous other joysticks that meet or exceed the environmental hazard rating required."[20]

Thomas asserts that based on the Hertz Equipment Rental mechanic's inspection, it was determined that the joystick had a damaged rubber boot which allowed debris to get into the joystick and impede its ability to return to neutral after being released. Mr. Norman opines that the most probable causes(s) of the accident are; (1) the inadequate environmental rating of the joystick that controls hydraulic and electrical systems, (2) the failure of the manufacturer to identify the environmental hazard rating and limits of the chosen joystick, and (3) the limited environmental rating of the joystick resulted in an unreasonably dangerous characteristic of design. He then states that "[t]here exist numerous alternative designs and selections of the joystick that would have prevented the accident of this case."

Genie argues that Mr. Norman has overlooked key facts about the JS1000, and further he has failed to show that the JS1000 would have prevented the accident from occurring. Specifically, Genie has submitted summary judgment evidence that the JS1000 joystick did not exist in August, 2005.[21] Genie also argues that Thomas has failed to show that the alternative design he (or his expert) proposes would have prevented the accident. Specifically, the rubber boot used on the

---

[19] Plaintiff's Exhibit 3, Aff. of Charles R. Norman, P.E.

[20] *Id.* p. 2.

[21] Defendant's Exhibit 1, affidavit of Jason Berry; Sauer Danfoss Product Information Bulletin No. JD2006-06 attached to Berry Aff. As Exhibit A.

JS1000 is identical to that used on the JS100; the only difference between the two joysticks is the base. The parts of the joystick which are exposed to the out of cab environment (ball grip, stick, collar, rubber boot) are identical and have the same Sauer Danfoss part numbers.[22] In *Morgan v. Gaylord Container Corp.*,[23] summary judgment was affirmed where plaintiff's expert opinions were not sufficient to show design alternatives were in existence at the time the allegedly defective product left the manufacturer's control. Thus, because Thomas has failed to prove that an alternative design existed at the time the product left the manufacturer's control and/or that the alternative design was capable of preventing the damage,[24] he has failed to establish that the boom lift had a design defect.

*Inadequate Warning*

Regarding inadequate warnings, the LPLA § 2800.57 provides that "at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." Thomas maintains that there is a lack of warning on the part of Genie Industries, Inc. to inform the user of the limitations of the product due to an inadequate environmental hazard rating.[25] Thomas specifically complains that there is no warning to inform the user that the joystick control is not dust tight and that debris might get into the joystick and impede its ability to return to neutral after being released. He submits the affidavit

---

[22] Defendant's Exhibit 1, affidavit of Jason Berry, ¶ 11.

[23] 30 F.3d 586, 590(5th Cir. 1994).

[24] La. Rev. Stat.Ann. § 2800.56; *Morgan, supra.*

[25] Plaintiff's Exhibit 3, affidavit of Charles Norman, P.E.

of Charles Norman who opines that "Genie had a duty to specify and provide the environmental hazard rating of the JS100. However, it did not do so.[26]

Genie maintains that the Operators Manual clearly warns the user to be aware of crushing hazards when grasping the platform guard rail; it also includes a pictorial warning.[27] The Operator's Manual warns users against using a damaged or malfunctioning machine as follows:

**Damaged Machine Hazards**

Do not use a damaged of malfunctioning machine.

Conduct a thorough pre-operation inspection of the machine and test all functions before each work shift. Immediately tag and remove from service a damaged or malfunctioning machine.[28]

Genie also submits the deposition testimony of Thomas wherein he testified that he did not read the Operator's Manual for the Genie S-120.[29] Thus, Genie maintains that the existence of warnings would be immaterial because Mr. Thomas failed to read the operator's manual.

Genie also argues that a warning that the "joystick control is not dust tight" would not have prevented the accident. Genie asserts that the JS100 is "dust tight" provided that its protective rubber boot is not damaged. Genie further asserts that the JS100's IP rating for the part of the joystick exposed to the elements is "6" on a scale of "1-6" indicating that it is dust tight. There is no dispute that the rubber boot had a tear which allowed debris to lodge in a position which prevented the joystick from returning to neutral causing the boom lift to malfunction. The summary

---

[26] *Id.*

[27] Defendant's Exhibit E.

[28] *Id.* p.5.

[29] Defendant's Exhibit A, Thomas depo., pp. 60-61.

8

judgment evidence establishes that Thomas has failed to prove either an inadequate warning or the element of causation – but for the inadequate warning, Thomas would not have been injured.

*Breach of Express Warranty*

Genie maintains that there is no evidence regarding the existence of an express warranty and that such a warranty was an inducement for the purchase of the Genie-120 or a contributing element in Thomas' injuries. Louisiana Revised Statute § 9:2800.58 requires a plaintiff to prove that "the express warranty induced the claimant or another person to use the product and the claimant's damage was proximately caused because the express warranty was untrue."

Thomas submits the affidavit of Charles Norman who opined that Genie breach its warranty by making the assertion that all ANSI requirements were met, yet the Genie did not address the expected environment that the S-120 would be suited for. Thomas has submitted as evidence the ANSI/SIA A92.5-1992 standards, but he fails to identify the specific provision of which he complains. The Court has reviewed the ANSI standards and has been unable to find a provision which requires the manufacturer to "address the expected environment that the S-120 would be suited for."[30] Thomas argues that even with a torn rubber boot, if the joystick would have had a 67 environmental rating, the accident would not have occurred. As noted by Genie, Mr. Norman does not specify which ANSI requirements were not met and how this caused Thomas' damages. Because Thomas has failed to identify the express warranty which Genie breached, and how his damage was proximately caused because the express warranty was untrue, this cause of action must be dismissed.

## CONCLUSION

---

[30] Plaintiff's opp. brief p. 19.

9

For the reasons set forth above, the motion for summary judgment will be granted dismissing with prejudice all claims against defendant, Genie Industries, Inc.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 22nd day of September, 2008.

```
                    /s/ James T. Trimble, Jr.
                    JAMES T. TRIMBLE, JR.
                    UNITED STATES DISTRICT JUDGE
```